**Ruth Ann WEIDEL, Plaintiff,**

v.

**John ASHCROFT, Defendant.**

**Civil Action No. 99–3446(JMF).**

United States District Court, District of Columbia.

Dec. 24, 2002.

David H. Shapiro, Richard L. Swick, Swick & Shapiro, Washington, DC, for Plaintiff.

Marina Utgoff Braswell, U.S. Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

Plaintiff claims that she was not offered a position with the Fraud Division in the Department of Justice in retaliation for filing a claim of sexual discrimination against the United States Attorney's Office in the Southern District of Texas. Defendant moves for summary judgment.

## FACTS

There is no genuine dispute as to the following facts:

1. Plaintiff, Ruth Ann Weidel, ("Weidel") worked as an Assistant United States Attorney in the Southern District of Texas from February, 1997, to June 10, 1997, when she was terminated.

2. On November 21, 1997, Weidel filed an EEO complaint in connection with her termination. She claimed that she was victimized by sexual discrimination in that office.

3. In January, 1998, Weidel applied for a position as a trial attorney in the Fraud Section of the Department of Justice's Criminal Division.

4. On June 11, 1998, Mary Spearing, then head of the Fraud Division, sent a memorandum to the acting Assistant Attorney General for the Criminal Division, requesting approval to hire plaintiff as a trial attorney in the Fraud Section.

5. In a letter dated June 29, 1998, Diane Abbington of the Personnel Programs Staff of the Criminal Division informed plaintiff that she had been tentatively selected for a trial attorney position with the Criminal Division, Fraud Section.

6. At about the same time, the Fraud Section requested a temporary waiver so that plaintiff could begin to work under a 14 month temporary appointment pending the results of her FBI investigation.

7. The Personnel Staff of the Criminal Division contacted Karen Morrissette, Deputy Chief of the Fraud Section, ("Morrissette") to inquire whether the Fraud Division was aware of plaintiff's termination by the United States Attorney's Office in Texas. Morrissette responded that she was.

8. Morrissette contacted Greg Serres, the First Assistant United States Attorney for the Southern District of Texas, who criticized Weidel's ability to get along with other people and declined to recommend her for employment by the Fraud Division. He described her performance as a "disaster." Government Exhibit 14 at 2.

9. On August 10, 1998, Morrissette wrote a memorandum to Sandie Bright, Acting Executive Officer of the Criminal Division, and Joshua Hochberg, the Acting Chief of the Fraud Division, in which she stated: "[W]e do not believe it would be advisable to extend an offer of employment to Ms. Weidel." Government Exhibit 14 at 3.

10. On September 18, 1998, Sandie Bright advised Weidel that the Criminal Division had withdrawn its request to appoint Weidel to a temporary appointment that would have permitted her to join the Fraud Division before her FBI background investigation was completed. Bright said: "That decision to rescind the request is based on your termination from your employment as an Assistant U.S. Attorney during your trial period." Government Exhibit 16.

11. Upon completion of the FBI investigation in November, 1998, and by memorandum dated February 4, 1999, the Criminal Division withdrew its support for Weidel's employment and asked that what Sandie Bright called "the tentative offer of employment" be withdrawn. Government Exhibit 19.

12. On February 26, 1999, Marc Salans advised Weidel that she would not

be employed by the Department of Justice. Government Exhibit 21.

## GOVERNMENT'S MOTION

The defendant, the Attorney General, moves for summary judgment, claiming that no reasonable person could find that the Fraud Division's withdrawal of the offer was the result of retaliation for the law suit challenging her firing in the South District of Texas as sexually discriminatory.

## APPLICABLE PRINCIPLES

Judicial consideration of such a motion requires application of certain bedrock principles that are familiar in Title VII litigation.

First, claims of discrimination and retaliation must most often be established circumstantially. The courts are sensitive to the reality that "smoking guns," *i.e.*, direct evidence or admissions of an improper motive, are rarely available. *See e.g. Gant v. Wallingford Board of Education*, 195 F.3d 134, 152 (2d Cir.1999). By necessity, the jury must be permitted to draw inferences [1] from evidence that permits either of two directly opposed propositions of fact, one of which establishes discrimination or retaliation and the other that does not. Hence, once the court finds such evidence, its function on summary judgment is exhausted for plaintiff has met her burden of establishing evidence upon which a reasonable person could premise a verdict in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(summary judgment inappropriate if factual issues can be resolved in favor of either party).

Second, as the court of appeals has recently reminded this Court (and me in particular) questions as to the credibility of witnesses are entirely for the jury. *Athridge v. Rivas*, 312 F.3d 474 (D.C.Cir. 2002). In determining whether there is a reasonable evidence upon which a jury could return a verdict, the court must resist any temptation to assess credibility in any way. Thus, and most basically, the opponent of a summary judgment motion meets her burden by presenting a witness who will testify in support of a certain material proposition, unless, of course, the substance of the testimony is factually impossible, *i.e.*, the sun shines at night.

Third, the jury's exclusive right to assess credibility invokes the cognate principle, familiar to Title VII jurisprudence, that the jury's disbelief of a witness's testimony permits it to draw the inference that the witness's motivation to lie is to disguise that the real reason for his actions were discriminatory or retaliatory. *Waterhouse v. Williams*, 298 F.3d 989, 992 (D.C.Cir.2002)(*quoting Reeves*, 530 U.S. at 147, 120 S.Ct. 2097).

## ANALYSIS

Application of these familiar principles to this case compels the conclusion that the government's motion must be denied. A critical element of the Fraud Division's decision was Serres's conversation with Morrissette; no one is pretending that the conversation in which Serres described Weidel's performance as a "disaster" was not significant in the ultimate decision the Fraud Division made. Yet, Serres's opinion of Weidel comes burdened with the reality that Weidel has complained that Serres discriminated against her when she worked in Texas and that Weidel has a

---

1. In the evaluation of a motion for summary judgment, all reasonable inferences from the evidence tendered are drawn in favor of the opponent of the motion. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 152, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

lawsuit pending in Texas where Serres's behavior towards Weidel is a central issue.[2] Whether Serres's opinion of Weidel's ability to get along with other people was objective or was motivated by a retaliatory animus for her EEO complaint is a pristine, perfect example of a genuine issue of fact that the jury and the jury alone should determine. Ascertaining why a witness has done or said something necessarily involves assessing the truthfulness[3] of his testimony. It is, therefore, hardly surprising that the federal courts have persistently indicated that questions of motive and intent cannot be resolved on summary judgment.[4]

Weidel can also establish the untruthfulness of Serres's criticism by trying to isolate it as aberrational in the context of her career. Positive evaluations of Weidel's ability to get along with other people, that contradict Serres's assertion of her inability to do so, support Weidel's contention that Serres is not telling the truth and permits the inference that his real reason for criticizing her was retaliatory. Evidence that Weidel marshals in her *Opposition* contradicting Serres's criticism of her[5] is therefore also evidence upon which a jury can predicate a verdict in her favor.

Finally, the government cannot insulate Serres's comments from the decision made in Washington not to hire plaintiff. A chain is as weak as its weakest link. If the jury believes that Serres's motive in criticizing Weidel was retaliatory, and that it influenced the decision the Fraud Division made, the jury could also find that Serres's criticism of her, premised on a retaliatory motive, was the real reason for her not getting a job in the Fraud Division. *See Brown v. Brody*, 199 F.3d 446, 453 (D.C.Cir.1999)(plaintiff in retaliation action must establish causality).

## CONCLUSION

I find that there is a genuine issue of material fact as to Serres's motivation in the criticism of Weidel that Serres commu-

---

**2.** *See Plaintiff's Opposition to Defendant's Motion for Summary Judgment* at 23 (Weidel is, in effect, accusing Serres of "discriminatory and illegal action in her EEO complaint." Serres became Weidel's supervisor and participated in the decision to terminate her.)

**3.** Note how, as I have explained, the jury's disbelief of Serres's testimony would permit them to infer that his real reason for being so critical of Weidel was to retaliate against her for claiming that he discriminated against her.

**4.** It has been established in this court that summary judgment is improper if factual issues necessary for decision involve the state of mind of a party. *Croley v. Matson Navigation Co.*, 434 F.2d 73, 77 (5th Cir. 1970); *NLRB v. Smith Industries*, 403 F.2d 889, 895 (5th Cir.1968); *Riley–Stabler Constr. Co. v. Westinghouse Electric Co.*, 396 F.2d 274, 277 (5th Cir.1968), rehearing denied 401 F.2d 526 (5th Cir.1968); *Marsden v. Patane*, 380 F.2d 489 (5th Cir.1967); *Alabama Great So. R.R. Co. v. Louisville and Nashville R.R.*, 224 F.2d 1 (5th Cir.1955).

Thus, "where motive, intent, subjective feelings and reactions, consciousness and conscience [are] to be searched, and examination and cross-examination [are] necessary instruments in obtaining the truth," summary judgment is inappropriate. *Alabama Great So. R.R. Co. v. Louisville and Nashville R.R. Co.*, supra at 5.

*Irwin v. United States*, 558 F.2d 249, 252 (5th Cir.1977)(motivation of taxpayer). *Accord: Dewey v. Clark*, 180 F.2d 766, 773 (D.C.Cir.1950)(motivation of landlord in evicting tenant). *See Hunt v. Cromartie*, 526 U.S. 541, 553 n. 9, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999)(*citing* Charles Alan Wright, Arthur R. Miller & May Kay Kane, *Federal Practice and Procedure*, § 2730 (1998)).

**5.** In her opposition to the government's motion, Weidel tenders the opinions of many people, who claimed she was courteous and got along with other people in every job she ever had.

nicated to Morrissette. I will, therefore, deny *Defendant's Motion for Summary Judgment.* An Order accompanies this Memorandum Opinion.

### ORDER

Pursuant to the accompanying Memorandum Opinion, it is, hereby,

**ORDERED** that *Defendant's Motion for Summary Judgment* [# 44] is **DE-NIED.**

**SO ORDERED.**