**Joan F. HIGBEE, Plaintiff,**

v.

**James H. BILLINGTON, Defendant.**

**Civil Action No. 00–3114(JMF).**

United States District Court, District of Columbia.

Feb. 24, 2003.

---

David H. Shapiro, Swick & Shapiro, Washington, DC, for plaintiff.

Meredith Manning, Beverly M. Russell, U.S. Attorney's Office, Washington, DC, for defendant.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

This case was referred to me by Judge Sullivan for all purposes including trial pursuant to LCvR 73.1(a). I herein resolve *Defendant's Motion for Summary Judgment.* For the reasons set forth below, defendant's motion for summary judgment will be denied.

## FACTS

There is no genuine issue as to the following facts:

1. Plaintiff, who began working at the Library of Congress in 1976, was detailed twice to the Library of Congress' ("the Library") Rare Book and Special Collections Division ("the Division") in March and May 1991.

2. Plaintiff was permanently reassigned to the Division as a GS–12 Reference Librarian in September 1991.

3. She and two other men, Clark Evans and Robert Shields, encumbered the position of Reference Librarian/Specialist, GS–12. All three had the same position description.

4. On January 14, 1993, plaintiff filed a Complaint of Discrimination indicating that the alleged bases of discrimination were gender and sexual harassment. When asked the date on which the alleged discrimination took place, she answered August 11, 1992, and a "previous and continuing pattern." *Defendant's Motion for Summary Judgment* ("Def.'s Mot."), Exhibit 6. In the section where she was asked to explain how she was discriminated against, she wrote:

   As a woman I have been harassed through silent treatment, intimidating and accusatory memoranda, trumped up charges, denial of meaningful recognition for professional accomplishments and responsibilities and withholding of work assignments designated by my position description. I have been subjected to a hostel [sic] work environment. Harassment continues.

   *Id.*

5. On May 30, 1995, Dr. Larry Sullivan, Chief of the Division, provided the three Reference Specialists, plaintiff, Evans, and Shields with performance appraisals. He rated Evans as "outstanding," resulting in a quality step increase worth $1,445 per annum. *Plaintiff's Opposition to Defendant's Motion for Summary Judgment* ("P.'s Opp."), Exhibit 16.

Dr. Sullivan rated plaintiff two steps lower, as "satisfactory," and she received no quality step increase. P.'s Opp., Exhibit 20.

6. Dr. Sullivan left the Library in 1995.

7. On November 24, 1995, T. Dean Flowers, EEO Officer at the Equal Employment Opportunity Complaints Office, concluded that plaintiff suffered disparate treatment and was also subjected to a hostile work environment because of her gender. P.'s Opp., Exhibit 32, at 1, 7. That decision was subsequently reversed by the Director of Dispute Resolution and Equal Employment Opportunity. P.'s Opp., at 9 & n. 4.

8. In 1998, the Library reorganized the Division and in a reduction in force, plaintiff and Shields were reassigned to other divisions within the Library.

### Plaintiff's Complaint

In the first count of the complaint, plaintiff charges disparate treatment based on sex. According to her, Dr. Sullivan engaged in what she calls a campaign of mistreatment. Complaint, ¶ 18. It took many forms such as (1) refusing to assign her work commensurate with her position description while permitting the two men, Evans and Shields, to perform such work; (2) shunning her professionally and personally; (3) never giving her fair credit for her accomplishments in her performance appraisals; (4) circulating intimidating and false accusatory memoranda about her; and (5) demeaning her personally and professionally and encouraging her fellow employees at the Library to do likewise. *Id.* According to plaintiff, Sullivan's actions killed her career. She claims she was never provided the opportunity for advancement that the other men were given.

In the second count, plaintiff alleges that the very same acts created a hostile work environment premised on sexual harassment.

### Defendant's Motion to Dismiss

■ Defendant first seeks dismissal on the grounds that "each of Plaintiff's allegations, even if true, does not constitute an adverse employment action. Accordingly, Plaintiff's sex discrimination claims must be dismissed for failure to state a claim." Def.'s Mot., at 6.

The government's assertion is in one sense startling. It, after all, is arguing that a woman who claims she was victimized by sexual discrimination over a substantial period of time in nearly every aspect of her employment, leading to the destruction of her career, has failed to state a claim under the civil rights laws. That is, at first glance, a difficult argument to square with the statutory command that "[a]ll personnel actions affecting employees . . . in the Library of Congress shall be made free from any discrimination based on . . . sex." 42 U.S.C.A. § 2000e–16(a) (1994).[1]

■ It is certainly true that, lest they micromanage businesses and federal agencies and be overwhelmed by every trivial complaint, the courts have insisted that the personnel action complained of in a Title VII action be substantial. In this Circuit, that means that plaintiff must allege that she endured "objectively tangible harm." *Brown v. Brody,* 199 F.3d 446, 457 (D.C.Cir.1999). There must be some showing of "materially adverse consequences affecting the terms, conditions or privileges of her employment or her future

1. *See also* 42 U.S.C.A. § 2000e–2(a) (1994)(deeming it an unlawful employment practice to discriminate with respect to compensation, terms, conditions, or privileges of employment because of sex).

employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." *Id.*

Surely, this plaintiff's complaints that Dr. Sullivan did not permit her to fulfill the basic responsibilities of her position description, denigrated her achievements at every opportunity, circulated intimidating and false accusatory memoranda about her, and never gave her performance evaluations commensurate with the actual performance of her duties, so that she never properly advanced in her career, assert "materially adverse consequences affecting the terms, conditions, or privileges of her employment." *Id.* She goes further, of course, and asserts that her failure to perform the duties of her position left her more vulnerable to the reduction in force than her male counterparts, so that she was forced out of the Division, dissipating the expertise she had gained in her job, and is now in a position where her advancement beyond the GS–12 position in the Hispanic Division is unlikely. That consequence, if true, certainly bears on the future employment opportunities identified in *Brown* as a potential source of "objectively tangible harm." *Id.*

When the government moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), it must appear beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Harris v. Ladner,* 127 F.3d 1121,1123 (D.C.Cir.1997). It is hardly impossible for a reasonable trier of fact, having heard all of plaintiff's allegations concerning her treatment, to conclude that she had suffered objectively tangible harm, as *Brown* requires.

In this context, an important distinction must be kept in mind. It may well be true that a court concludes that a specific employment action, such as an unfavorable performance evaluation or a lateral transfer, without any other consequences, cannot serve as a predicate for relief under Title VII. It hardly follows that when a woman complains she was singled out for persistent unfavorable treatment over a period of time because of her sex, that that complaint fails to state a claim for relief merely because she points to an unfavorable performance evaluation or a lateral transfer as instances of that discrimination. To so conclude would be to deny relief to a plaintiff who complains of that course of conduct merely because she points to instances of discriminatory behavior that, in themselves, would not permit her relief. A series of indignities can accumulate over time creating a radical transformation of one's entire work experience. If the courts are to remain faithful to the purposes of Title VII and its history, they surely cannot insist that each discriminatory act complained of must, in itself, meet some standard of substantiality before the accumulation of them is actionable. *Cf. Freedman v. MCI Telecommunications Corp.,* 255 F.3d 840, 844 (D.C.Cir.2001)(reviewing whether acts complained of "taken alone or collectively fail to rise to the level of an adverse employment action").

### Defendant's Motion for Summary Judgment

■ The government also seeks summary judgement, but that motion invokes the entirely different standard that requires the government to establish that on the basis of the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits," [2] no reasonable finder of fact could render a

---

**2.** FED.R.CIV.P. 56(c).

verdict in the plaintiff's favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Since this a Title VII case, the familiar burden shifting introduced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is applicable. Plaintiff must establish that she was a member of a protected group and that she was treated differently from men in the terms, conditions, and privileges of her employment. *Id.* at 802 & n. 13, 93 S.Ct. 1817. As I have just stated, she points to specific employment actions in which she was treated differently and identifies the men who were treated more favorably. She easily meets her burden, which is light,[3] and thereby shifts to the defendant the burden of showing legitimate business reasons for the actions claimed to be discriminatory. *Id.* at 802, 93 S.Ct. 1817. Once the defendant brings forth those reasons, plaintiff must show that the proffered reasons are a mere pretext for discrimination.[4] *Id.* If the jury believes they are pretextual, it may then infer that the real reason was the discrimination which the defendant denies. *Reeves v. Sanderson Plumbing,* 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). *See also Aka v. Washington Hospital Center,* 156 F.3d 1284, 1292 (1998).

Defendant certainly marches forth with the evidence it will produce to establish the reasons for the differing treatment, such as her not performing all the duties in her position description, her "satisfactory" performance evaluations, and her ultimately being subjected to the reduction in force. Plaintiff, in turn, tenders the potential testimony of one of the men with whom she works and of a woman who supervised her for a while. Both of these witnesses will testify as to her underutilization and her demeaning treatment at Sullivan's hands. Plaintiff also tenders the testimony of other people who insist that they either suffered or witnessed sexually discriminatory conduct at Sullivan's hands as well as evidence supporting her claim that her performance evaluations understated her achievements. The clash between the evidence supporting the government's reasons and the evidence plaintiff will produce to challenge their legitimacy surely creates a genuine issue of fact. Indeed, the evidence pertaining to Sullivan's treatment of other women is that rare thing: direct evidence of a discriminatory animus. While it is not necessary to reach the issue in this case, given the other evidence, it may well be that the evidence of Sullivan's treatment of other women justifies in itself the denial of the government's motion because it raises a genuine issue of the motive or intent with which he acted.[5] In any event, when a case turns on the motive or intent with which a person acted, summary judgment is inappropriate. *Weidel v. Ashcroft,* 234 F.Supp.2d 5, 8 n. 4 (D.D.C.2002).

### The Sexual Harassment Claim

▮ Paragraphs 18 and 21 of the complaint are identical, meaning that plaintiff relies upon the same evidence to establish that she was subjected to disparate treatment (Count 1) and to a hostile

---

*Cones v. Shalala,* 199 F.3d 512, 515 (D.C.Cir.2000).

4. Pretext must be established by direct evidence or an inference that discrimination was the real reason. *Hall v. Giant Food, Inc.,* 175 F.3d 1074, 1078 (D.C.Cir.1999); *Aka v. Washington Hospital Center,* 156 F.3d 1284, 1292–93 (D.C.Cir.1998)(en banc); *Mungin v. Kat-* ten, Muchin, & Zavis, 116 F.3d 1549, 1553 (D.C.Cir.1997).

5. *See Jones v. WMATA,* 946 F.Supp. 1011, 1019 (D.D.C.1996)(testimony of third parties regarding defendant's prior discriminatory acts is relevant and not unduly prejudicial on the issue of motive and intent to discriminate).

environment (Count 2). However, the standard to assess the presence of the latter is different. To establish a hostile working environment, the court must consider all the circumstances, including (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with an employee's work performance. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The federal courts have held that whether the facts establish a hostile environment is ordinarily a jury question, unless, of course, no reasonable person could find that a hostile environment existed. *Conner v. Schrader–Bridgeport Int'l Inc.,* 227 F.3d 179, 199–200 (4th Cir.2000); *O'Shea v. Yellow Technology Services, Inc.,* 185 F.3d 1093, 1102 (10th Cir.1999). *Cf. Barbour v. Browner,* 181 F.3d 1342, 1348 (D.C.Cir.1999)(whether, on appellate review, sufficient evidence of hostile environment was presented to warrant submission of the case to the jury is a mixed question of law and fact).

Having reviewed the evidence plaintiff tenders in support of the frequency and pervasiveness of the conduct, how it interfered with the performance of her duties, and how it affected her psychologically, I cannot say that no reasonable person would find that she was subjected to a hostile environment.[6] I, therefore, will deny the defendant's motion for summary judgment.

### Failure to Exhaust Administrative Remedies

■ As I noted above, plaintiff filed her administrative complaint on January 14, 1993, and the EEO office issued its initial decision, finding her complaint valid, at least in part, on November 23, 1995. We also know that on June 14, 1995, Larry Sullivan proposed a reduction in force in the Division Reading Room. P.'s Opp., Exhibit 22. Sullivan then left the Library and on June 17, 1998, the Reduction in Force took place and plaintiff left the Division to become a reference librarian in the Hispanic Division. P.'s Opp., Exhibit 35. Plaintiff never filed an administrative grievance after the Reduction in Force and defendant correctly argues that the Reduction in Force may not serve, in itself, as a basis for relief. Plaintiff seeks to rescue herself by saying the reduction in force was "a factor contributing to the hostile work environment to which the Library subjected [her]." P.'s Opp., at 36 & n. 15. But, a complaint filed in 1993 cannot possibly exhaust an administrative remedy as to an event that did not occur until 1995. Plaintiff's reliance[7] on *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) is misplaced. *Morgan* speaks to whether a complaint of a hostile working environment filed in 1995 could be predicated on events that occurred more than 300 days before the complaint was filed. There is nothing in *Morgan* that could possibly support the assertion that a plaintiff could predicate an action for hostile working environment on events that occurred after he filed his EEO complaint even though he cannot claim that he ever made those events the subject of an administrative complaint before he filed his lawsuit in federal court. *Morgan* deals with the timeliness of the administrative complaints that were made and not with whether the

---

**6.** *McKinney v. Dole,* 765 F.2d 1129, 1138 (D.C.Cir.1985)(holding that any harassment or unequal treatment of an employee based on sex compromises an illegal condition of employment under Title VII if it is sufficiently patterned or pervasive).

**7.** *See* P.'s Opp., at 36 & n. 15.

failure to file any administrative complaint should be excused.

I note that this does not mean that the Reduction in Force in 1998 does not bear upon the damages she claims to have suffered because of what Sullivan did in the period about which she did complain when she filed her administrative complaint. I mean to say that the Reduction in Force in 1998 may not serve in any way as an independent predicate for relief.

Finally, while the parties have oddly ignored the issue, I believe that I must reach the same conclusion as to the 1995 performance evaluations that resulted in plaintiff's being found to be "satisfactory" while Evans was rated higher and received a pay award. These events may not serve as an independent predicate for relief, but may serve as a basis for damages if plaintiff presents sufficient evidence that what happened in 1995 was caused by what occurred in the period covered by her administrative complaint.

An Order accompanies this Memorandum Opinion.

### ORDER

Upon consideration of defendant's motion, plaintiff's opposition thereto, and defendant's reply thereto, and in accordance with the accompanying Memorandum Opinion, it is, hereby,

**ORDERED** that Defendant's Motion For Summary Judgment [#23] is **DE-NIED.**

**SO ORDERED.**