Neva HAYSLETT, Plaintiff,

v.

Stephen A. PERRY, Administrator, U.S. General Services Administration, Defendant.

No. CIV.A.02–2439 ESH.

United States District Court, District of Columbia.

Aug. 16, 2004.

Nathaniel D. Johnson, Waldorf, MD, for Plaintiff.

Wyneva Johnson, U.S. Attorney's Office for D.C., Washington, DC, for Defendant.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Plaintiff, an African American female employed by the General Services Administration ("GSA"), has filed an employment discrimination suit against her employer under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, alleging discriminatory failure to promote and retaliation. Defendant has moved for summary judgment.[1] For the reasons set forth below, the Court concludes that defendant's motion for summary judgment should be granted.

## BACKGROUND

Plaintiff began her employment with GSA in 1996 in the Congressional Affairs Office as a GS–5 doing clerical duties. In

---

1. Defendant has captioned his motion as a "Motion to Dismiss, or, in the Alternative, for Summary Judgment." However, as plaintiff correctly notes, defendant's motion addresses only summary judgment, and he offers materials outside the complaint in support of his motion. Thus, the motion must be treated as one for summary judgment, and any motion to dismiss will be denied.

October 1996 she was reassigned to GSA's Office of Information Technology ("OIT") as a Staff Assistant, GS–7. In November 1998 she was detailed to GSA's Leadership and Learning Center. In November 1999 she returned to OIT and was assigned to a Staff Assistant, GS–7 position in the Emerging Information Technology Policies Division, which was headed by Richard N. Kellett. Plaintiff was officially assigned to Mr. Kellett's supervision in February 2000. (Kellett Decl. ¶ 5.)

In anticipation of plaintiff's assignment to Mr. Kellett's division, they executed an Individual Development Plan ("IDP") on August 10, 1999, which listed Ms. Hayslett's short-term goal of obtaining a Program Analyst position at GS–7/9 and her long-term goal of obtaining a Program Analyst, GS–13 position. (*Id.* ¶ 6; Kellett Decl. Ex. 1.) The IDP represented "goals to strive and work for," not "a promise or guarantee of a promotion." (Kellett Decl. ¶ 6.)

After plaintiff began working for Mr. Kellett, they had discussions about her position and career path. Mr. Kellett suggested that Ms. Hayslett might be interested in a Program Analyst, GS–7 position to function in a support capacity for other office personnel. (*Id.* ¶ 7.) After several conversations with plaintiff, Mr. Kellett initiated the paperwork in 1999 to move plaintiff to a Program Analyst, GS–7 position, and the paperwork was ultimately forwarded to his superiors, who approved it in February 2000. (*Id.* ¶¶ 8–9.) The paperwork was then forwarded to GSA's Office of Human Resources for processing. (*Id.* ¶ 8.)

Monique Spencer of the Office of Human Resources informed Mr. Kellett that plaintiff was not eligible for a reassignment to a Program Analyst position without formally advertising the position and requiring plaintiff to apply and compete against other applicants, because her current position carried a full performance level of GS–7. In other words, plaintiff would not be eligible for promotion without competition to a position with a higher grade level, since Program Analyst positions in GSA—unlike Staff Assistant positions—carried promotion potential to a GS–12 level. (*Id.* ¶¶ 10–11; Spencer Decl. ¶ 8.) Mr. Kellett determined that his division did not need a Program Analyst position with promotion potential to GS–12. (Kellett Decl. ¶ 13.) Ms. Spencer therefore suggested that Mr. Kellett establish a Program Assistant position for Ms. Kellett at the GS–7 grade level. (Spencer Decl. ¶ 9.) Management ultimately reassigned plaintiff to that position on June 18, 2000. (*See id.* Ex. 3.)

On January 19, 2001, upon Mr. Kellett's return from a three-month detail to another agency, an altercation occurred between plaintiff and Mr. Kellett after a staff meeting. (Kellett Decl. ¶¶ 17–24.) Mr. Kellett contacted Federal Protective Services ("FPS") and filed a statement as a result of the incident. (*Id.* Ex. 3 (FPS Complainant/Witness Statement).) Two days later, plaintiff approached Mr. Kellett and asked to leave work early to attend a class in which she had enrolled at Strayer University. (*Id.* ¶ 34.) Mr. Kellett instructed plaintiff to cancel and withdraw from the courses because she had not obtained the proper prior authorization.[2] (Kellett Decl. ¶ 29; Hayslett Dep. at 43.) On May 9, 2001, plaintiff filed a formal complaint with defendant's EEO office alleging discrimination and retaliation based on, *inter alia*,

---

2. Plaintiff disputes this and asserts that she had received permission from Mr. Kellett to enroll. (Pl.'s Ex. 1 at 38 (Hayslett Dep.).)

Mr. Kellett's actions. (Pl.'s Ex. 9 (EEO Compl.).)

Subsequently, plaintiff received a performance appraisal on October 4, 2001, from Mr. Kellett for the period of October 1, 2000 to August 26, 2001. (Pl.'s Opp. Ex. 10 (2001 Performance Appraisal).) Although her overall rating was "Successful," as it had been in her 1999 and 2000 appraisals, the narrative comments were less favorable than those in prior years. (Id. Ex. 11 (1999 Performance Appraisal); id. Ex. 12 (2000 Performance Appraisal).)

On August 27, 2001, plaintiff was reassigned to the Office of Transportation and Personal Property ("OTPP") as a Program Assistant, GS–7. Her immediate supervisor there was Becky Rhodes. In early 2002[3] plaintiff was again reassigned, this time to the Travel Management Policy Division to work with the Federal Premier Lodging Program ("FPLP"), but again as a Program Assistant, GS–7. Plaintiff continues to work in the FPLP, and her supervisor there has at all times been Peggy De-Prospero. Plaintiff filed additional EEO complaints on February 20, 2002, and April 18, 2003. (See Pl.'s Ex. 27, 28.) Subsequently, she brought this action on December 11, 2002, and has since amended her complaint on two occasions to incorporate additional allegations of retaliatory conduct.

## ANALYSIS

## I. SUMMARY JUDGMENT STANDARD

Under Fed.R.Civ.P. 56, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255, 106 S.Ct. 2505; see also Wash. Post Co. v. United States Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C.Cir.1989).

The nonmovant's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmovant must provide evidence that would permit a reasonable jury to find in her favor. Laningham v. United States Navy, 813 F.2d 1236, 1241 (D.C.Cir.1987). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). "While summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of [her] obligation to support [her] allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." Calhoun v. Johnson, 1998 WL 164780, at *3 (D.D.C. Mar.31, 1998), aff'd, 1999 WL 825425 (D.C.Cir. Sept.27, 1999) (citation omitted). In addition, Local Civil Rule 7(h) provides that "[a]n opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to

---

**3.** The record indicates a discrepancy as to the date when this assignment began. An EEO report of investigation lists the date as April 2002 (Pl.'s Ex. 13), but according to Ms. De-Prospero, the date was June 2002. (De-Prospero Decl. ¶ 4.)

which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the part of the record relied on to support the statement."

Despite these principles of law and the requirements of the local rules, "Plaintiff's Statement of Material Facts in Dispute" (hereinafter "Plaintiff's Statement") is woefully deficient. Plaintiff fails to controvert most of the facts set forth by defendant, including, for example, material facts establishing the nonavailability of the very position to which plaintiff claims she should have been promoted.[4] Under Rule 7(h), "the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Moreover, even where plaintiff purports to dispute certain facts, her "factual" allegations lack any citation to the record. Instead, they merely reference plaintiff's opposition or her complaint.[5] Since neither constitutes evidence, plaintiff cannot rely on them in order to create disputed issues of fact.

■ The burden is on the parties, not on the Court, to "identify the pertinent parts of the record, to isolate the facts that are deemed to be material, and to distinguish those facts which are disputed from those that are undisputed." *Twist v. Meese*, 854 F.2d 1421, 1425 (D.C.Cir.1988);

*see also Jackson v. Finnegan, Henderson, Farabow, Garrett, & Dunner*, 101 F.3d 145, 153 (D.C.Cir.1996) (noting that the burden is on counsel to "winnow the wheat from the chaff") (internal citation and quotation marks omitted). Plaintiff has failed to carry this burden, and therefore, the Court will treat as conceded any facts not specifically controverted by competent evidence. *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 992 (D.C.Cir.2002). Given this posture, it becomes readily apparent that plaintiff cannot establish a prima facie case of discrimination because there was no available position. Nor can she establish a prima facie case of retaliation, as several of the alleged retaliatory acts predate the relevant protected EEO activity, and as to the remaining acts, they do not constitute adverse actions.

## II. PLAINTIFF'S CLAIMS

■ Title VII provides, in relevant part, that it is unlawful for an employer "to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color ...." 42 U.S.C. § 2000e–2(a)(1). Defendant seeks summary judgment as to plaintiff's claims of discrimination based on race and color, thus triggering the applica-

---

4. In particular, with respect to plaintiff's non-promotion claim (Count I), Plaintiff's Statement does not refute defendant's assertion that Mr. Kellett did not intend to fill a Program Analyst position, but rather, he intended to revise Ms. Hayslett's position description to better reflect her duties. (Def.'s Statement of Material Facts ("Def.'s Stmt.") ¶¶ 17–18.) Additionally, with respect to her retaliation claim (Count II), plaintiff fails to refute defendant's statement that her reassignment to OTPP resulted from a budgetary need to redeploy employees away from the OIT. (Def.'s Stmt. ¶¶ 27, 30.)

5. For example, plaintiff claims that "Mr. Kellett's decision not to promote Plaintiff to the position of Program Analyst, GS–7, was motivated by discrimination and retaliation, because he did not want her to have promotion potential to GS–12." (Pl.'s Statement of Material Facts Not in Dispute ("Pl.'s Stmt.") ¶ 5.) As support for this statement, plaintiff cites her own opposition. (*See also id.* ¶¶ 4–5, 13 (citing Pl.'s Opp. in support of factual allegations); Pl.'s Opp. 2–3 (citing Second Am. Compl. ("Compl.") in support of factual allegations).)

tion of the *McDonnell Douglas* three-part "shifting burdens" test. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

The *McDonnell Douglas* framework establishes "an allocation of the burden of production and an order for the presentation of proof." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Plaintiff has the initial burden of proving a prima facie case of discrimination by a preponderance of evidence. *Id.* at 506, 113 S.Ct. 2742. If she succeeds, the burden shifts to defendant to articulate some legitimate, nondiscriminatory reason for its actions. *Id.* Its burden is only one of production, and it "need not persuade the court that it was actually motivated by the proffered reasons." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see also St. Mary's Honor Ctr.*, 509 U.S. at 509, 113 S.Ct. 2742 ("[T]he determination that a defendant has met its burden of production (and has thus rebutted any legal presumption of intentional discrimination) can involve no credibility assessment.").

If defendant is successful, then "the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (internal citations and quotation marks omitted). At that point, plaintiff has the burden of persuasion to show that defendant's proffered nondiscriminatory reason was not the true reason for the employment decision. *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089; *see also Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C.Cir.) ("[a]lthough the *McDonnell Douglas* framework shifts intermediate evidentiary burdens between the parties, [t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff") (internal citations and quotation marks omitted).

## A. Count I: Non–Promotion

■ Plaintiff alleges that defendant's "withdrawal of [an] announced position" amounted to discriminatory nonselection based on race and color in violation of Title VII. (Compl. ¶¶ 23–25.) Plaintiff later attempts in her opposition to redefine her claim, arguing that it could alternatively be characterized as alleging a discriminatory failure to promote because she "requested a promotion on several occasions and was denied such request." (Pl.'s Opp. at 7.) "To establish a prima facie case of discriminatory non-promotion," plaintiff must show that: " '(1) [s]he is a member of a protected class; (2)[s]he applied for and was qualified for an available position; (3) despite [her] qualifications [s]he was rejected; and (4) either someone filled the position or the position remained vacant and the employer continued to seek applicants.' " *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C.Cir.2003) (citations omitted). This framework demands "that the alleged discriminatee demonstrate at least that his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought." *Morgan*, 328 F.3d at 650–51 (internal citation and quotation marks omitted). Regardless of whether she characterizes her claim in Count I as nonselection or failure to promote, plaintiff has failed to satisfy this requirement.

With respect to plaintiff's allegation that Mr. Kellett withdrew an announced position, the statement in plaintiff's com-

plaint that "on or about January 2001, she learned that Defendant withdrew a position announcement for the Program Analyst position, GS–12" (Compl.¶ 23) is plainly insufficient to meet her burden. Plaintiff has offered no evidence that any position was available or that a position announcement was withdrawn. Instead, plaintiff offers evidence that Mr. Kellett approved changing her title to "Program Assistant" and alleges that he then refused to advertise a Program Analyst position with the promotion potential to GS–12. (Pl.'s Opp. at 3.) This does not establish that a Program Analyst position with promotion potential to GS–12 was, in fact, available. Likewise, plaintiff has failed to provide evidence to support a prima facie case of discrimination based on her claim that she "requested a promotion on several occasions" and "suffered adverse employment actions when her requests for promotions were denied." (*Id.* at 7–8.) Again, plaintiff cites no evidence that there was an available position to which she could have been promoted. Lacking evidence of an available position, plaintiff cannot establish a prima facie case of employment discrimination based on non-promotion. *Morgan,* 328 F.3d at 652 ("[h]aving thus failed to raise a genuine issue that the ... position for which he applied was one for which the employer was seeking applicants, [defendant] failed to establish a prima facie case") (internal citation and quotation marks omitted).

But even assuming that there was a shred of evidence that a Program Analyst position was available and that the vacancy announcement had been withdrawn, plaintiff still falls short of establishing a prima facie case of discrimination, for there is no evidence that defendant continued to seek applicants after plaintiff was allegedly passed over for the promotion. *See Morgan,* 328 F.3d at 651–52 (finding no prima facie case of discrimination or retaliation where the defendant had "suspended recruitment" for a previously posted position one month before plaintiff applied for it, and the position was never filled). *See also Bowie v. Ashcroft,* 283 F.Supp.2d 25, 31 (D.D.C.2003); *Jones v. Tanoue,* 131 F.Supp.2d 220, 222 (D.D.C.2001) (no prima facie case when position was cancelled and never filled), *aff'd,* 2002 WL 31056658, at *1 (D.C.Cir. Sept.16, 2002) (per curiam); *Carter v. Pena,* 14 F.Supp.2d 1, 6 (D.D.C. 1997) (same), *aff'd,* 1998 WL 315616, at *1 (D.C.Cir. Apr.8, 1998) (per curiam).[6]

■ Finally, even if one were to assume *arguendo* that plaintiff could establish a prima facie case of non-promotion, which she cannot, defendant has offered a legitimate, nondiscriminatory reason for her alleged non-promotion. First, Mr. Kellett never intended to "promote" Ms. Hayslett. (*See* Kellett Decl. ¶¶ 6, 7, and 13; Pl.'s Ex. 2 at 1 (Mem. of Feb. 11, 2000 from Richard Kellett to Joan Steyart, Deputy Associate Administrator, OIT) (in light of the nature of the duties plaintiff was performing, "it would seem more appropriate that her job

**6.** One court has held that a cancellation of a vacancy announcement may provide a basis for a failure to promote claim. *Terry v. Gallegos,* 926 F.Supp. 679, 709–10 (W.D.Tenn. 1996). But unlike *Terry,* where the employer had a "history of cancelling vacancies when he disliked those on the certification list," *id.* at 710, there is no comparable evidence here to support an inference of illegal retaliation or discrimination. Moreover, even under *Terry*'s analysis, "cancellation of a vacancy announcement would not constitute an adverse employment action if the defendant were able to provide legitimate, non-discriminatory reasons for the vacancy cancellation and the plaintiff failed to meet his burden of proving that those reasons were merely a pretext for discrimination." *Bowie,* 283 F.Supp.2d at 31 n. 4. As discussed herein, defendant has stated a legitimate, nondiscriminatory reason for its actions here, and thus, *Terry* is distinguishable.

title be changed to Program Analyst" but "[s]he understands this is not a promotion or the promise of a promotion").) Rather, he intended to change her job title from "staff assistant" to "program analyst," but he intended that she would remain at the GS–7 level. He did not know at the time he spoke to Ms. Hayslett that GSA Program Analyst Positions carried promotion potential beyond plaintiff's GS–7 level. (Kellett Decl. ¶¶ 9, 13.) Monique Spencer of GSA's Office of Human Resources informed Mr. Kellett that the change he proposed to plaintiff's position description could not be accomplished without a formal job advertisement and competition for the position. Plaintiff's current Staff Assistant position carried a full performance level of GS–7, while the Program Analyst positions in GSA carried promotion potential to GS–12. Ms. Spencer explained that "OPM regulations and the implementing GSA Merit Promotion Plan therefore preclude an employee's reassignment to a position with promotion potential greater than that of the position occupied by the employee without engaging in competition." (Spencer Decl. ¶ 7 (citing 5 CFR § 335.103 and GSA Merit Promotion Plan).) [7]

Moreover, Mr. Kellett made a management determination that his division did not need a position with promotion potential to GS–12. (Kellett Decl. ¶ 13.) His division already had one Program Analyst position with promotion potential to GS–12, and the creation of another would have required approval from Mr. Kellett's supervisors and the budget office. (*Id.*) In addition, positions at higher grade levels were more consistent with his division's needs than a Program Analyst with promotion potential to GS–12. (*Id.* ¶¶ 13–14.)

Mr. Kellett informed plaintiff that he could only reassign her to a Program Assistant position with a full performance level of GS–7, and indeed, plaintiff was reassigned to that position effective June 18, 2000. (*Id.* ¶ 12; Spencer Decl. ¶ 11.) Thus, defendant has offered a legitimate, nondiscriminatory reason for not placing plaintiff in a Program Analyst position with GS–12 promotion potential.

■ In response, plaintiff has failed to offer any evidence that would refute this reason. Pretext may be established "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089. "It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible. She must show that the explanation given is a phony reason." *Fischbach v. D.C. Dep't of Corr.,* 86 F.3d 1180, 1183 (D.C.Cir.1996) ("Once the employer has articulated a non-discriminatory explanation for its action, ... the issue is not the correctness or desirability of the reasons offered but whether the employer honestly believes in the reasons it offers.") (internal citation and quotation marks omitted). In other words, a district court judge does not sit as a "super-personnel department that reexamines an entity's business decisions." *Id.* (internal citation and quotation marks omitted). Plaintiff's unsupported claims that Mr. Kellet's division was indeed in need of such a position or that he discriminated against her by not wanting her to have promotion potential amount to nothing more than assertions of her dis-

---

7. Although GSA exempts from competition promotion or transfers to a position having *no greater* promotion potential than the position currently held by the employee (Spencer Decl. Ex. 2 (GSA Merit Promotion Plan) at 2–3), competitive procedures apply to "[t]ransfer[s] to a position at a higher grade or with more promotion potential than a position previously held on a permanent basis in the competitive service." 5 CFR § 335.103(c)(1)(v).

agreement with defendant's reason. (Pl.'s Opp. at 11.) This is not enough.

Since plaintiff has failed to offer any competent evidence to show that Mr. Kellett's decision was motivated by race or color, rather than by his belief that his department did not need a Program Analyst with GS–12 promotion potential, there is no evidence of pretext, and accordingly, the Court will grant summary judgment for defendant as to Count I.[8]

### B. Count II: Retaliation

■ Plaintiff also asserts a claim in Count II for retaliation. Specifically, she alleges a litany of retaliatory acts—(1) Mr. Kellett filed a "false and frivolous" complaint on January 19, 2001, with the FPS against plaintiff; (2) defendant withdrew a Program Analyst vacancy announcement for which plaintiff intended to apply; (3) Mr. Kellett instructed plaintiff on January 21, 2001, to withdraw from job-related courses at Strayer University; (4) defendant reclassified plaintiff's position from Program Analyst to Program Assistant; (5) Mr. Kellett gave her a negative performance evaluation for the period of Octo-

ber 1, 2000 to August 26, 2001; (6) plaintiff was denied proper classification with respect to duties she performed; (7) plaintiff was excluded from job-related meetings after April 2003; and (8) plaintiff was reassigned to OTPP in June 2002, "where her duties were purely clerical in nature." (Pl.'s Opp. at 11.)

■ To make out a prima facie claim for retaliation, plaintiff must show: "(1) that she engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two." *Brown v. Brody*, 199 F.3d 446, 452 (D.C.Cir.1999) (internal citation and quotation marks omitted). Plaintiff's opposition references certain instances of protected activity in which she engaged, including the filing of formal EEO complaints on May 9, 2001 and April 18, 2003.[9] (Pl.'s Opp. at 4, 6, 18.) Four of the alleged retaliatory acts—the FPS incident, withdrawal of the vacancy announcement,[10] the instruction to withdraw from job-related classes, and reclassification of plaintiff's position[11]—pre-date the May 9, 2001 ad-

---

8. Plaintiff also makes passing reference, without any record citation, to three other Staff Assistants who were promoted in 1997 to Program Analyst positions. (Pl.'s Opp. at 8, 2 n. 3.) She states that she is the "only former Staff Assistant who has not been promoted to a Program Analyst position," and that while the other two African American Staff Assistants were promoted, "they were only promoted after they and Plaintiff complained" about the promotion of a white female Staff Assistant. (*Id.* at 8.) Plaintiff's purpose in referencing this event is far from clear, since it appears from her complaint that she is not challenging the decision to promote three other women to the position of Program Analyst, GS–7. (*See* Compl. ¶¶ 16–17). But even if one were to assume that her non-selection in 1997 was properly before this Court, plaintiff has failed to offer any evidence to support an inference of discrimination, especially given the fact that two of the three women who

were promoted were African American. (*Id.* at 8, 2 n. 3.)

9. Plaintiff's Second Amended Complaint mentions an additional administrative complaint filed on February 20, 2002. (Compl.¶ 12.)

10. Of course, as previously discussed, there was in fact no withdrawal of a vacancy announcement. Nonetheless, even crediting plaintiff's claim, it occurred prior to May 2001. (Compl.¶ 23.)

11. Plaintiff's unsupported allegation at page 11 of her opposition that defendant "reclassified her position from Program Analyst to a Program Assistant" has no factual basis in the record. It is undisputed that she was never classified as a "Program Analyst," and when she *was* reclassified from her previous position as a "Staff Assistant" to a "Program Assistant," the reclassification occurred on

ministrative complaint, and thus, cannot be the subject of a retaliation claim.[12] Accordingly, plaintiff has failed to establish a causal connection between these alleged retaliatory acts and any protected activity. *Brody,* 199 F.3d at 452.

Plaintiff also relies on Mr. Kellet's negative evaluation as a basis for her retaliation claim. Plaintiff alleges that, despite receiving generally positive narrative comments from Mr. Kellett on two prior performance appraisals, she received negative comments on her October 4, 2001 appraisal. To establish an adverse personnel action in the absence of diminution of pay or benefits, plaintiff must show "materially adverse consequences affecting the terms, conditions, or privileges of employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." *Brody,* 199 F.3d at 457. "Mere idiosyncrasies of personal preference are not sufficient to create an injury." *Id. See also Jones v. Billington,* 12 F.Supp.2d 1, 13 (D.D.C.1997) ("[N]ot everything that makes an employee unhap-

py is an actionable adverse action.") (citation and quotation marks omitted), *aff'd without op.,* 1998 WL 389101, at *1 (D.C.Cir. June 30, 1998). An "employment decision does not rise to the level of an actionable adverse action ... unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage." *Walker v. Wash. Metro. Area Transit Auth.,* 102 F.Supp.2d 24, 29 (D.D.C.2000) (citation and quotation marks omitted); *see also Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

Poor performance evaluations are not "necessarily adverse actions." *Brody,* 199 F.3d at 458 (no prima facie case where a poor performance evaluation affected neither the plaintiff's grade or salary); *Russell v. Principi,* 257 F.3d 815, 818–20 (D.C.Cir.2001) (low performance evalua-

June 18, 2000 (Pl.'s Ex. 4), and thus, any reclassification pre-dated the May 9, 2001 complaint.

12. Since plaintiff's opposition fails to mention any protected activity pre-dating the May 9, 2001 EEO complaint, it is not up to the Court to search through the record for evidence of such activity. *Twist,* 854 F.2d at 1425 (a "district court judge should not be obliged" to sift through the record to determine what "may, or may not, be a genuine issue of material disputed fact," and instead, the burden is on the parties to identify the pertinent parts of the record and to isolate material facts); *Jackson,* 101 F.3d at 153. But nonetheless, the Court recognizes plaintiff's vague reference in ¶ 28 of her Second Amended Complaint to some 1999 EEO complaint. Even if plaintiff could properly cite to this complaint as protected activity, the causal connection to the alleged retaliatory acts is too tenuous. In a retaliation case, a causal connection "may be

established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir.1985). Plaintiff cannot satisfy this burden. Her 1999 EEO complaint was apparently lodged against a different supervisor (*see* Pl.'s Ex. 9), and although no specific date for the 1999 complaint is given, it appears that it was filed at least a year or more before each of the alleged retaliatory events. *See Brodetski v. Duffey,* 141 F.Supp.2d 35, 43 (D.D.C.2001) ("Although courts have not established the maximum time lapse ... for establishing a causal connection", courts "seldom have accepted time lapses outside of a year in length"); *Garrett v. Lujan,* 799 F.Supp. 198, 202 (D.D.C.1992) (no causal connection when adverse action occurred "almost a full year" after plaintiff's most recent complaint).

tion alone created no prima facie case even though it exposed plaintiff temporarily to being laid off pursuant to a reduction in force, because it amounted to an "unrealized risk of a future adverse action" and was "too ephemeral to constitute an adverse action"). Despite this clearly established precedent, plaintiff fails to point to any negative consequences or objectively tangible harm that resulted from the negative narrative comments on her 2001 evaluation. Plaintiff's reliance on *Hayes v. Shalala* for the proposition that a poor performance evaluation in the context of a series of other alleged retaliatory actions that, "taken together, . . . constituted illegal retaliation" is misplaced. 902 F.Supp. 259, 267 (D.D.C.1995). As this Circuit recognized in both *Brody* and *Russell,* actionable adverse employment actions must encompass "objectively tangible harm." *Brody,* 199 F.3d at 457; *Russell,* 257 F.3d at 818–19. Plaintiff contends, without any record support, that the negative performance appraisal led to her failure to "receive the position of Program Analyst, GS–7, which has a promotion potential to GS–12." (Pl.'s Opp. at 12–13.) As support, she cites an e-mail to Mr. Kellett from Ms. Spencer acknowledging that Mr. Kellett had expressed interest in changing Ms. Hayslett's position description, and that there was a position description of "program analyst," but that it had GS–12 promotion potential. (Pl.'s Opp. Ex. 22.) However, rather than establishing that the evaluation led to non-promotion, this e-mail simply shows that the department had previously established a Program Analyst position description, which had a GS–12 promotion potential. Plaintiff's unsupported allegation does not fill the gap. Absent an *available* position with that description, plaintiff cannot show that the negative performance appraisal led to any objectively tangible harm. *Brody,* 199 F.3d at 457.[13]

■ Plaintiff next claims retaliation because she was denied the proper job classification with respect to the duties she performed at FPLP. Specifically, she claims that "Ms. DeProspero retaliated against her by refusing to revise her position description to accurately reflect the duties she performed." (Pl.'s Opp. at 17.) The exact scope of her claim is unclear. However, even taking as true plaintiff's claim that she performed technical and analytical duties while in the Program Assistant, GS–7 position at OTPP, she has failed to establish any adverse action. To the extent that she claims that she is performing the same duties as those in higher positions (*id.*), that alone does not rise to the level of an adverse action. *Brodetski,* 141 F.Supp.2d at 45. And to the extent she claims that she should be promoted to a higher grade (*see* DeProspero Decl. ¶ 4 (plaintiff requested a promotion and expressed a desire to retire at a higher grade

---

13. Even assuming that a negative performance evaluation could, in some circumstances, be an adverse action, that is not the case here because the negative comments were removed as a result of an administrative proceeding. In its Final Agency Decision on an EEO complaint filed by plaintiff on February 20, 2002, the EEO Administrator ordered GSA to "rescind the 2001 Performance Appraisal" that she received on October 4, 2001, and to "replace it with another performance appraisal with comments similar to those" in her 1999 and 2000 performance appraisals. (Pl.'s Ex. 27.) Because the negative comments on plaintiff's evaluation were resolved at the administrative level, they could leave "no lasting effect on either the employee's present or future position or her pocketbook." *Dickerson v. SecTek, Inc.,* 238 F.Supp.2d 66, 80 (D.D.C.2002) ("A contrary holding would invite judicial micromanagement of temporary employment disputes that have already been resolved through internal processes.") (internal citation and quotation marks omitted).

level); Pl.'s Opp. Ex. 21), plaintiff has failed to show that there was a position open for which she applied and was qualified. *Morgan*, 328 F.3d at 652 Accordingly, plaintiff has failed to establish that her job classification was an adverse action.

■ Plaintiff also claims she was excluded from certain job-related meetings in retaliation for filing her April 2003 EEO complaint. (Compl. ¶ 44.) In contrast, she alleges that prior to her April 2003 complaint, she was invited to attend FPLP meetings on various job-related topics. (Pl.'s Ex. 1 at 100–01 (Hayslett Dep.).) Plaintiff has identified *no specific meetings*, nor has she demonstrated how her alleged exclusion from unspecified meetings had any adverse impact on her employment terms or conditions or caused any objectively tangible harm. Accordingly, she has failed to establish an adverse action. *Brody*, 199 F.3d at 457; *see also Gu v. Boston Police Dep't*, 312 F.3d 6, 15 (1st Cir.2002) ("plaintiffs make bald assertions that they were excluded from important meetings ... but they were unable to name a particular meeting or important decision from which they were excluded. Such unsupported assertions are insufficient evidence of a material change in working conditions.")

■ Finally, plaintiff claims that her transfer to OTPP was retaliatory. In August 2001, Keith Thurston, Acting Assistant Deputy Associate Administrator of OIT, determined that he needed to redeploy staff from OIT to "support other organizational needs." (Thurston Decl. ¶ 6.) Mr. Thurston averred that this decision, which was "motivated by budget direction from OMB," did not affect only plaintiff, as "[t]en employees were reassigned to other organizations including the plaintiff." [14] (*Id.*) As a result, plaintiff was reassigned from a Program Assistant, GS–7 position within OIT to a Program Assistant, GS–7 position within OTPP. This move amounted to a lateral transfer.

■ A lateral transfer with no diminution of pay or benefits is not an adverse action absent "some other materially adverse consequences" that resulted in "objectively tangible harm." *Brody*, 199 F.3d at 457; *see also Childers v. Slater*, 44 F.Supp.2d 8, 21 (D.D.C.1999) ("The plaintiff does not offer any evidence to suggest that the reassignment from an international program manager to the project leader ... had any corresponding negative effect on her salary, benefits, responsibilities, stature, or otherwise."), *vacated in part on other grounds*, 197 F.R.D. 185 (D.D.C. 2000). Although plaintiff was not happy when she learned that her new duties were "non-technical and purely clerical in nature," she has not alleged that the pay, benefits, or any other terms, conditions, or privileges of her employment, or her future employment opportunities were adversely affected by the transfer.[15] And, even if plaintiff's argument is that she was performing certain technical and analytical

---

14. Indeed, plaintiff essentially concedes this claim, since she admits that the transfer to OTPP was motivated by budgetary concerns, not by any retaliatory animus. In her opposition, she does not dispute defendant's claim that the reassignment was for budgetary reasons, but states that "even if this is true, Defendant has not explained why Plaintiff's duties were reduced to a purely clerical nature when she was reassigned." (Pl.'s Opp. at 16.)

15. To the extent that plaintiff argues that she had been performing the same duties as employees in higher levels (Pl.'s Opp. at 17), "this is the level of personnel decision-making in which courts should not meddle," and it "does not rise to the level of an adverse employment action." *Brodetski*, 141 F.Supp.2d at 46.

functions at her new job—despite a job description that only reflected administrative functions—she alleged the same about her old job (*see* Pl.'s Opp. at 16–17), and thus, she cannot claim that she was any worse off after the transfer. Moreover, plaintiff has failed to show how the transfer had any objectively tangible negative effect on her future employment opportunities. *See Brody,* 199 F.3d at 456; *see also Russell,* 257 F.3d at 819–20 (temporary exposure to higher risk of being subject to reduction in force as a result of negative evaluation is not sufficient to establish an adverse action). She has therefore failed to establish that this transfer constituted an adverse employment action.[16]

Accordingly, plaintiff has failed to establish a prima facie case of retaliation, and summary judgment will be entered for defendant on Count II.

## CONCLUSION

For the foregoing reasons, plaintiff has failed to meet her burden of establishing either discrimination or retaliation. Accordingly, defendant's motion for summary judgment will be granted. A separate Order accompanies this Memorandum Opinion.

## *ORDER*

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that defendant's motion to dismiss is **DENIED,** and defendant's motion for summary judgment is **GRANTED;** and it is

**FURTHER ORDERED** that this case is dismissed with prejudice.

**This is a final appealable order.**

---

16. Plaintiff's reliance on *Higbee v. Billington,* 246 F.Supp.2d 10, 14 (D.D.C.2003), for the proposition that "a series of indignities can accumulate over time creating a radical transformation of one's entire work experience" is misplaced. In *Higbee,* plaintiff asserted "materially adverse consequences affecting the terms, conditions, or privileges of her employment" by showing a pervasive pattern of actions including that her supervisor "did not permit her to fulfill the basic responsibilities of her position description, denigrated her achievements at every opportunity, circulated intimidating and false accusatory memoranda about her, and never gave her performance evaluations commensurate with the actual performance of her duties." *Id.* at 14. Here, there is no evidence of any such pervasive actions that could arguably amount to materially adverse consequences affecting the terms, conditions, or privileges of plaintiff's employment.