**Tanya Ward JORDAN, Plaintiff,**

v.

**Donald EVANS, Secretary, U.S. Department of Commerce, Defendant.**

**No. 04–356.**

United States District Court, District of Columbia.

Dec. 3, 2004.

---

David W. Sanford, Lisa Ann Goldblatt, Sanford, Wittels & Heisler, LLP, Washington, DC, for Plaintiff.

Laurie J. Weinstein, United States Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION

LEON, District Judge.

Before the Court are the plaintiff's Motion for Preliminary Injunction[1] [# 2] and the defendant's Motion to Dismiss [# 4] the Amended Complaint. In this action, the plaintiff, Tanya Ward Jordan, a seventeen-year employee of the defendant U.S. Department of Commerce ("DOC"), alleges that the agency discriminated and retaliated against her on the basis of her race and disabilities, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq., Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131–12165, the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the District of Columbia Human Rights Act ("DCHRA"), D.C.Code § 1–2502, et seq. The focus of the plaintiff's claims is her transfer to another position within the DOC, which became effective on March 7, 2004, and the alleged failure on the part of DOC to provide "reasonable accommodations" with regard to her disabilities. For the reasons discussed below, the Court **DENIES** the plaintiff's Motion for Preliminary Injunction and **GRANTS** the defendant's Motion to Dismiss the Amended Complaint with regard to the plaintiff's Title VII claims.

### Background

### I. Factual Background

The plaintiff, Tanya Ward Jordan ("Jordan" or "the plaintiff"), is an African American female who has been employed by the DOC in the Office of the Secretary since 1987. Amend. Compl. ¶¶ 3, 5. She suffers from several disabilities, including respiratory problems and occupational stress. *Id.* at ¶ 3. While the current action focuses on her transfer on March 7, 2004 from DOC's Office of Budget to its Office of Financial Management, as the pleadings in this case address her employment history at the agency prior to this most recent transfer, a brief summary of this history is warranted.

In June 1998, Jordan began working in the Office of Executive Budgeting and Assistance Management ("OEBAM") as a Management and Program Analyst, a GS–14 level position. Amend. Compl. ¶ 5. She also served as the Departmental Management's ("DM") Audit Liaison. According to Jordan, in this capacity, she was responsible for reporting on the functions, activities, and initiatives related to DM funds. *Id.*

On July 18, 2003, Jordan was transferred from OEBAM to the Office of Budget ("OB") pursuant to realignment by the Chief Financial Officer and Assistant Secretary for Administration ("CFO/ASA"). Compl. ¶ 8(a); Mot. for TRO, Ex. 1. She

---

1. This motion was initially filed on March 5, 2004 as a Motion for Temporary Restraining Order. The same day, following a hearing on the motion, the Court denied the plaintiff's request for temporary injunctive relief and converted the motion into a Motion for Preliminary Injunction. Hr. T. 17:6–8.

alleges that she was the only employee transferred to OB under this realignment. Compl. ¶ 8(a). Jordan also alleges that although the office she occupied prior to that transfer was equipped with a window and a thermostat, the office to which she was transferred in July 2003 failed to accommodate her disabilities because it was small and dusty, and lacked adequate ventilation. *Id.* at ¶ 8(b).

On August 8, 2003, Jordan contacted the Office of Civil Rights ("OCR") regarding discrimination and retaliation based on the failure of the Director of OB, Barbara Retzlaff, to provide reasonable accommodations to her. Mem. in Support of TRO 3–4. On September 9, 2003, Doug Allis, Jordan's acting supervisor, issued a letter requesting that Jordan submit medical information to DOC's Medical Officer regarding her alleged disabilities. *Id.* at 4; Mot. for TRO, Ex. 1. Jordan complied and submitted information regarding her medical conditions. On December 8, 2003, DOC's Medical Officer, Reginald Wills, issued a memorandum to DOC's Employee and Labor Relations department stating that Jordan should be given "a private office with a private entrance, thermostat, and [a] window that allows natural light..." *Id.* at Ex. 1.

Jordan alleges that DOC did not comply with her requests for "reasonable accommodations" and on December 16, 2003, she formally filed a discrimination complaint with OCR, the receipt of which was acknowledged on January 28, 2004. Mem. in Support of TRO 5.

Jordan alleges that on March 1, 2004, while her discrimination complaint was still pending at the administrative level, she received a letter from Janet C. Hoffheins, DOC's Director of Office of Human Resources Management, informing her that,

effective March 7, 2004, she was to report to another office within DOC, the Office of Financial Management ("OFM"). Amend. Compl. ¶ 8(d); Mem. in Support of TRO 5. The February 27, 2004 memorandum from Hoffheins states that Jordan's assignment to OB during the July 2003 realignment was "an administrative error" and to correct this error, the agency would transfer her to a Staff Accountant position in OFM, at the GS–14 equivalent. Mot. for TRO, Ex. 1. The memorandum states that the primary objective of the new position is "to formulate and implement financial policies and procedures and financial report requirements." *Id.* The position description appended to the memorandum states that the general duties and responsibilities of the Staff Accountant include serving as "the policy and planning authority and expert advisor to top managers and outside officials on a management function or major extramural program for a bureau or major line component..." *Id.* Jordan alleges that in addition to being transferred to a position that denied her "Audit Liaison duties" and had fewer responsibilities, she was placed under the supervision of an employee who was at the same pay-band level. Amend. Compl. ¶ 8(d).

Jordan believes that she has been transferred, and otherwise has been discriminated and retaliated against by DOC throughout her employment, because she has spoken out against the agency's racially discriminatory practices. Amend. Compl. ¶ 7. She alleges that she has taken a leadership role in a class action lawsuit on behalf of African American employees of DOC, pending before the Equal Employment Opportunity Commission ("EEOC"),[2] and is also an active and visible member of several organizations that address discrimination in the workplace,

---

2. *Janet Howard, et al. v. Donald L. Evans, Secretary, U.S. Department of Commerce,* EEOC No. 100–A1–7429X, Agency No. 95–55–0278 ("the *Howard* class action").

including the Ronald H. Brown Chapter of Blacks in Government ("BIG") Organization and the NAACP Federal Sector Task Force. *Id.* at ¶¶ 3, 7.

Based on her claim of retaliation,[3] Jordan seeks injunctive relief returning her to her former capacity as DM Liaison and enjoining DOC from removing her from this capacity absent promotion or other compelling employment necessity. Amend. Compl., Prayer for Relief; Pl. Reply 1–2. She also seeks assignment to an office with reasonable accommodations to address her disabilities, pending the resolution of this action. *Id.*

## II. Administrative and Procedural History

As previously noted, Jordan filed a discrimination complaint with OCR in December 2003. With this complaint still pending at the administrative level, Jordan, proceeding *pro se*,[4] filed the complaint in the current action on March 5, 2004, seeking a temporary restraining order enjoining DOC from effectuating her transfer to OFM on March 7, 2004. On the same day, this Court held a hearing on the motion for temporary restraining order. The Court denied the motion for temporary restraining order because Jordan had failed to demonstrate the likelihood of "irreparable harm" that would result from her transfer. Hr. T. 17:10–13. The Court indicated, however, that it would reconsider her motion as one seeking a preliminary injunction and would give DOC an opportunity to respond. Hr. T. 17:6–8.

Thereafter, DOC filed a motion to dismiss her complaint and a memorandum in opposition to the motion for preliminary injunction on March 18, 2004. Although

Jordan later amended her initial complaint with the assistance of counsel, the government gave notice that its motion to dismiss addressed the Amended Complaint. Def. Response to Amend. Compl. After a hearing on the motion for preliminary injunction on May 13, 2004, the parties filed supplemental pleadings on May 17, 2004 regarding the issue of "irreparable injury." The Court heard oral argument on the motion to dismiss on May 21, 2004. For the following reasons, the Court finds that Jordan has failed to make the necessary showing for this Court to grant a preliminary injunction. Furthermore, the Court finds that absent a basis for preliminary injunctive relief, it lacks jurisdiction over Jordan's Title VII claims because she has not shown that she has exhausted her administrative remedies. Accordingly, the Court GRANTS DOC's motion to dismiss these claims.

## Discussion

### I. Plaintiff's Motion for Preliminary Injunction

#### A. Jurisdiction Over the Plaintiff's Claim for Injunctive Relief

■ DOC raised the issue of this Court's jurisdiction to grant the relief sought by Jordan during the March 5, 2004 hearing on the motion for temporary restraining order. Hr. T. 15:4–19. DOC has also argued in its pleadings that Jordan's complaint is not properly before the Court because the plaintiff has failed to exhaust the administrative remedies required to pursue a suit in federal court under Title VII. Opp. to Mot. for PI and Mem. in Support of Mot. to Dismiss 8–9 ("Mem. in Support of Mot. to Dismiss").

---

**3.** Although Jordan claimed several statutory grounds for her Amended Complaint, the parties have focused solely on her Title VII retaliation claim in their briefing with regard to

her motion for preliminary injunction. Accordingly, the Court considers this claim.

**4.** The plaintiff subsequently retained counsel, who entered his appearance on April 2, 2004.

While the failure to exhaust administrative remedies would indeed deprive this Court of jurisdiction over the ultimate resolution of the plaintiff's Title VII claims, see Section II *infra*, the D.C. Circuit has explicitly held that "[i]f the court may eventually have jurisdiction of the substantive claim, the court's incidental equitable jurisdiction, despite the agency's primary jurisdiction, gives the court authority to preserve the status quo pending ripening of the claim for judicial review." *Wagner v. Taylor*, 836 F.2d 566, 571 (D.C.Cir.1987). Thus, in light of Title VII's legislative history and "the broad statutory powers designed to effectuate and preserve the rights of Title VII claimants," our Circuit held in *Wagner* that Congress did not intend to foreclose courts from providing injunctive relief to plaintiffs facing irreparable harm while pursuing their administrative remedies. *Id.* at 572. Accordingly, this Court is not barred from considering Jordan's claim for injunctive relief even though she may not have exhausted her administrative remedies under Title VII.

**B. *Plaintiff's Claim for Injunctive Relief***

■ In evaluating a motion for preliminary injunction, it is well-settled that the Court shall balance: (1) the likelihood of the plaintiff's success on the merits; (2) the threat of irreparable injury to the plaintiff in the absence of an injunction; (3) the possibility of substantial harm to other interested parties from a grant of injunctive relief; and (4) the interests of the public. *See, e.g., Wagner*, 836 F.2d at 575–76; *Saunders v. The George Washington Univ.*, 768 F.Supp. 843, 844 (D.D.C. 1991) ("*Saunders*").

While it is clear that the district court has the authority to grant preliminary injunctive relief under certain circumstances in government personnel cases, the Supreme Court has acknowledged that "the well-established rule that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs,'" coupled with the unwillingness of courts to grant equitable relief in employment cases, counsel against the routine application of the "traditional standards governing more orthodox 'stays.'" *Sampson v. Murray*, 415 U.S. 61, 83–84, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) ("*Sampson*"). The Supreme Court thus held in *Sampson* that a plaintiff, seeking to stay her termination pending an administrative appeal under a Civil Service Commission regulation, was required to make "a showing of irreparable injury sufficient in kind and degree to override these factors cutting against the general availability of preliminary injunctions in Government personnel cases." *Sampson*, 415 U.S. at 83–84, 94 S.Ct. 937. Only in genuinely "extraordinary cases" may irreparable injury be found. *Id.* at 92, 94 S.Ct. 937.

■ Although the D.C. Circuit has not expressly held that the standard set forth in *Sampson* applies in Title VII litigation, *Wagner*, 836 F.2d at 575 n. 66, at least one member of our Court has held that, in light of the Supreme Court's ruling in *Sampson*, a plaintiff seeking injunctive relief in a Title VII discrimination action against the federal government must make "a more stringent showing of irreparable injury" and demonstrate that "civil rights claims take precedence over the government's interest in making personnel decisions." *Bonds v. Heyman*, 950 F.Supp. 1202, 1212 (D.D.C.1997) ("*Bonds*"), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). This Court agrees.

*1. Plaintiff's Likelihood of Success on Merits of Her Retaliation Claim*

In evaluating the appropriateness of preliminary injunctive relief, the Court

must first consider whether Jordan has demonstrated a likelihood of success on the merits of her retaliation claim. *Wagner*, 836 F.2d at 575. Claims of retaliation under Title VII are governed by the three-step analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ("*McDonnell Douglas*"). Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case for discrimination. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The defendant must then respond by producing legitimate, non-discriminatory explanations for the alleged discriminatory acts. *Id.*; *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Upon such production, the plaintiff must demonstrate that the non-discriminatory reasons offered are "mere pretext" for discrimination or retaliation. *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Accordingly, Jordan must show a likelihood of success in setting forth a *prima facie* case of retaliation and overcoming any legitimate reasons set forth by DOC to explain its action in transferring her and failing to accommodate her disabilities.

### a. *Prima Facie Case of Retaliation*

■ To set forth a *prima facie* case of retaliation, a plaintiff must show (1) that she has engaged in statutorily protected activity; (2) that her employer took an adverse personnel action against her; and (3) that a causal connection existed between the protected activity and the adverse action. *Cones v. Shalala*, 199 F.3d 512, 520–21 (D.C.Cir.2000); *Moore v. Summers*, 113 F.Supp.2d 5, 22 (D.D.C.2000). Jordan has clearly engaged in statutorily protected activity by participating in the *Howard* class action and filing her own

discrimination complaint with OCR. However, even assuming that Jordan could demonstrate a causal connection between her transfer and her protected activity, the Court finds it highly unlikely that she can establish the necessary "adverse action" requirement.

■ The D.C. Circuit held in *Brown v. Brody* that in determining what constitutes an "adverse action" in the Title VII context, the key inquiry is whether the employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significant different responsibilities, or a decision causing a significant change in benefits." 199 F.3d 446, 456 (D.C.Cir.1999). Thus, the D.C. Circuit held that—

> [A] plaintiff who is made to undertake or who is denied a lateral transfer—that is, one in which she suffers no diminution in pay or benefits—does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm.

*Id.* at 457; *accord Freedman v. MCI Telecommunications Corp.*, 255 F.3d 840, 844 (D.C.Cir.2001) ("Thus, it is not enough to ask whether the transfer was purely lateral. We must also ask if other changes in terms, conditions, or privileges followed from the transfer.") ("*Freedman*"). Courts in this Circuit have thus declined to find "adverse action" where plaintiffs fail to allege a diminution in pay or benefits, *see, e.g., Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C.Cir.2002) ("*Forkkio*"), *Hayslett v. Perry*, 332 F.Supp.2d 93, 105 (D.D.C. 2004), and also cannot demonstrate any material changes in their duties or respon-

sibilities following a lateral transfer. *See Forkkio,* 306 F.3d at 1131; *Stewart v. Ashcroft,* 211 F.Supp.2d 166, 174–75 (D.D.C. 2002). Indeed, "[m]ere idiosyncracies of personal preference are not sufficient to state an injury[.]" *Brown,* 199 F.3d at 457. Accordingly, the loss of reputation or prestige are not injuries that constitute "adverse actions." *Forkkio,* 306 F.3d at 1130–31; *Weber v. Hurtgen,* 297 F.Supp.2d 58, 65–66 (D.D.C.2003).

In this case, Jordan argues that as a result of the transfer to the Staff Accountant position, she "was unjustly denied her Audit Liaison duties, was given fewer responsibilities, [and] was assigned financial statement analysis and other tasks she had never performed in her 26 years of government service[.]" Amend. Compl. ¶ 8(d). According to Jordan, she was transferred from a "highly visible position" as Management Analysis with "Audit Liaison" responsibilities to "an obscure assignment as an Accountant, solely responsible for working with numbers..." Pl. Reply in Support of Pl. 13. She also alleges that the new position "significantly" changed her benefits because she was placed on a "pay banding" system, rather than on the General Schedule ("GS") scale on which she had previously been compensated. *Id.*; Mem. in Support of TRO 5.

DOC responds that Jordan cannot show that the agency took "adverse action" against her because the lateral transfer provided the "reasonable accommodations" she sought to address her disabilities.[5] Mem. in Support of Mot. to Dismiss 7. In addition, DOC argues that there is no materially adverse consequence to the transfer because Jordan will not lose pay or

benefits. *Id.* at 3, 12. Jordan and other employees in OFM are participating in DOC's "Demonstration Project," which includes features such as "pay banding" and "pay for performance." *Id.* at 3. DOC claims that employees under this system have two benefits that GS scale employees do not: (1) the base pay for these employees includes locality pay, which results in higher benefits such as overtime rates, and (2) salary increases can occur on an annual basis, rather than in the one, two, or three year waiting period required to receive within-grade-step increases. *Id.* at 3, n. 3. For example, in her affidavit, Janet Hoffheins, Deputy Director of DOC's Office of Human Resources Management, states that on the GS scale, Jordan would need to wait for three years to reach Grade 14, Step 10, whereas under the new system, she became eligible for an annual increase in salary after September 30, 2004. Decl. of Janet C. Hoffheins ¶ 8. Thus, DOC asserts that although Jordan is no longer on the GS scale, she will have the potential to enhance her bonuses under the "pay banding" and "pay for performance" program. *Id.*; *see* Mot. to Dismiss, Ex. 2 (Declaration of Janet C. Hoffheins). Based on these facts, DOC asserts that Jordan cannot demonstrate that she was the subject of "adverse action" by the agency.

The Court agrees with DOC that based on the record as it currently stands, Jordan has not demonstrated, and is not likely to demonstrate, that she was the subject of "adverse action." First, Jordan conceded at the March 5, 2004 hearing on her motion for temporary restraining order that the transfer would not change her base salary. Hr. T. 9:11. Although she has

---

**5.** According to DOC, the March 7, 2004 reassignment transferred Jordan to an office with direct sunlight through a window that can be opened and with a thermostat that can be adjusted. Mem. in Support of Mot. to Dismiss 4. DOC also asserts that the office has a

private entrance. *Id.* OPM, the office to which Jordan has been reassigned, has a written telework policy, which DOC asserts that Staff Accountants such as Jordan can utilize. *Id.*

alleged that the change to the "pay banding" system will "significantly" change her opportunity to earn bonuses, she has not alleged any facts to support this contention or to shed doubt on the DOC's description of the "Demonstration Project" and its impact on her pay and benefits.

Second, the Court finds that Jordan has not demonstrated that the Staff Accountant position resulted in any material changes in her duties or responsibilities. *See Forkkio*, 306 F.3d at 1131. As previously noted, the Court must not only ask whether a transfer was "lateral," but must also evaluate if there were other changes in the terms, conditions, or privileges from the transfer. *Freedman*, 255 F.3d at 844. Although Jordan asserts that she "[has] always done. . . audit liaison or . . . financial policy and procedures, not number-crunching. . . [,]" Hr. T. 6:15–18, she has not alerted the Court to any specific duties or responsibilities that clarify why the Staff Accountant position and her previous position differ in a material way, other than to repeatedly state that she has been denied her "Audit Liaison" duties. However, Jordan has neither alleged nor shown that "Audit Liaison" duties were the focus of her position as a Management Analyst, nor has she shown that her new position does not involve similar duties.[6] Indeed, the description of the Staff Accountant, Mot. for TRO, Ex. 1, and the affidavit of Gordon T. Alston, the Director of the Office of Policy Assistance at OFM, who supervises Staff Accountants, indicate that the objective of the position is to develop policies for financial management, similar to Jordan's own description of her previous job. Def. Mot. to Dismiss, Ex. 4. Moreover, courts in this Circuit have previously declined to find an "adverse action" where a plaintiff's new duties were "non-technical and purely clerical in nature" following a transfer, where the plaintiff can show no diminution in pay or benefits. *See Hayslett*, 332 F.Supp.2d at 105–06. While it may be that the positions differ materially from the plaintiff's perspective, the record does not reflect such significant differences and thus the Court may not infer them.

Third, Jordan has argued that the transfer to the Staff Accountant position downgraded her to an "obscure assignment" as compared to the "highly visible" position she previously held. Pl. Reply in Support of PI 13. However, "[p]urely subjective injuries, such as dissatisfaction with a reassignment, or public humiliation or loss of reputation" are not "adverse actions," and thus the D.C. Circuit has held that a plaintiff cannot establish an "adverse action" on the basis that the reassignment deprived him of prestige. *Forkkio*, 306 F.3d at 1130–31.

Finally, Jordan has not put forth facts indicating that the office she has occupied following her transfer fails to provide her the "reasonable accommodations" she needs for her medical conditions. Accordingly, the Court finds that Jordan has further failed to demonstrate an ability to prove this as an alternative form of "adverse action" against her.

### b. *Pretext*

However, even if Jordan had set forth a *prima facie* case of retaliation sufficient to satisfy the first prong of the *McDonnell Douglas* framework, the Court finds that she has not shown that she can rebut DOC's legitimate, non-discriminatory explanation for her transfer. To demonstrate that the defendant's explanation for

---

**6.** In addition, although Jordan strenuously asserts in her pleadings that she has never had experience in accounting or the analysis of financial statements, she acknowledged at the motions hearing on March 5, 2004 that she had previously served as an accountant at DOC. Hr. T. 6:9–15.

its allegedly retaliatory action is "mere pretext," a plaintiff must show that the proffered reason is false and that the real reason for the action was to retaliate against her. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Thus, "[i]t is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible[,] rather she must show that 'the explanation given is a phony reason.'" *Fischbach v. D.C. Dep't of Corrections,* 86 F.3d 1180, 1183 (D.C.Cir.1996) (citing *Pignato v. American Trans Air, Inc.,* 14 F.3d 342, 349 (7th Cir.1994)).

In her affidavit, Janet Hoffheins states that during the July 2003 reorganization, Jordan was assigned in error to OB, even though other employees in the OEBAM were transferred to OFM. Decl. of Janet C. Hoffheins ¶ 4. According to Hoffheins, the agency sought to remedy this administrative error by reassigning Jordan from OB to OFM. *Id.* at ¶ 5. After review of Jordan's qualifications, it was determined that because she had previously served in a GS–13 Staff Accountant position and had

been a Financial Program Specialist and Financial Management Specialist, this experience and the educational requirements she possessed made her qualified for the Staff Accountant position in OFM at a GS–14 equivalent level. *Id.* at ¶ 5.

Although Jordan has set forth a detailed timeline of the events she believes led up to the retaliatory transfer, Pl. Reply in Support of PI, Ex. 1, none of the facts alleged in this timeline or her other pleadings suggest that she can substantiate her claim that she was transferred to keep her from accessing sensitive documents and as a result of her involvement in civil rights activity. The burden is on Jordan to demonstrate the likelihood of success on the merits, and at this stage in the case, she has not shown the Court that she will be able to prove that DOC's explanation for her transfer was false.[7] Given this weakness of her claim for retaliation and her failure to demonstrate an "adverse action," the Court finds that Jordan has not demonstrated a likelihood of success on the merits of her retaliation claim.[8]

---

7. *Compare Segar v. Civiletti,* 516 F.Supp. 314, 319–20 (D.D.C.1981) (finding that the plaintiff DEA agent had demonstrated a likelihood of proving pretext where he was a witness in a Title VII class action against the DEA, was told that the DEA Administrator was displeased with his testimony and the plaintiff had better "watch it," and he was subsequently demoted after having been reassigned to a supervisor who he believed was a "racist" and who had received a highly critical evaluation by the agency) and *Bonds,* 950 F.Supp. at 1209–1210 (finding, at the summary judgment stage, that the plaintiff had shown a likelihood of success on the merits with regard to pretext where she was the subject of a reduction-in-force ("RIF") termination even though she had forty years of service, she was one of three employees terminated and the other two employees were rehired with other funding, and her supervisor referred to her in "glowing terms" but within a few short months, stated that he found her "useless") *with Nichols v. AID,* 18

F.Supp.2d 1, 5–6 (D.D.C.1998) (declining to grant preliminary injunctive relief at a "nascent stage in the litigation[,]" without a record that was developed enough for the court to determine if the plaintiff could show pretext).

8. DOC also argues that Jordan's failure to exhaust her administrative remedies indicates she is unlikely to succeed on the merits of her retaliation claim. The Court finds that to consider her failure to exhaust as weighty evidence in its evaluation of Jordan's likelihood of success on the merits would run counter to the premise underlying the D.C. Circuit's opinion in *Wagner,* recognizing this Court's ability to hear claims for temporary injunctive relief in an employment case prior to exhaustion at the administrative level. However, the failure to exhaust is clearly a bar to Jordan's ability to move forward with her Title VII claims absent her claim for preliminary injunctive relief. *See* Section II *infra.*

## 2. *Irreparable Injury*

In addition to considering Jordan's likelihood of success on the merits of her claim, the Court must consider whether she has shown "irreparable injury" that would result if the Court failed to issue injunctive relief. The Court denied Jordan's motion for temporary restraining order on the grounds that she had not shown "irreparable injury." When the parties had completed briefing on the motion for preliminary injunction, the Court heard oral argument and invited the parties to supplement their pleadings on the issue of whether the Court could issue injunctive relief based on Jordan's assertion that DOC's retaliatory actions against her had a "chilling effect" on the willingness of others to come forward with discrimination claims. Because the Court does not believe that Jordan has shown that the March 7, 2004 transfer will detrimentally affect her health, and because "[m]ere injuries, however substantial, in terms of money, time and energy" are not sufficient to justify the issuance of injunctive relief, *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921, 925 (D.C.Cir.1958) (per curiam), the Court's evaluation of "irreparable injury" focuses on this "chilling effect."

In *Wisconsin Gas Co. v. FERC,* the D.C. Circuit held that irreparable harm exists if: (1) the injury is both certain and great, not merely feared as likely to occur; (2) the injury is of such imminence that there is a "clear and present" need for relief to prevent it; and (3) economic loss is insufficient to constitute irreparable harm unless the plaintiff's very existence is threatened. 758 F.2d 669, 673–74 (D.C.Cir.1985). As previously discussed, in a case involving a government personnel action, this Court will carefully assess whether a plaintiff has made a showing of "extraordinary" circumstances that would override the factors cutting against the general availability of

preliminary injunctive relief in such cases. *Sampson,* 415 U.S. at 84, 94 S.Ct. 937.

Jordan argues that the actions taken by DOC against her have had a "chilling effect" on third parties both involved in and not involved in the *Howard* class action suit. Pl. Reply in Support of PI 14; Pl. Supp. Brief 2. In support of this claim, Jordan presents the affidavits of seven former and current DOC employees, several of whom are either class members in the *Howard* action or members of BIG, who allege that they believe other African American employees find the retaliation against Jordan "scary" and they are thus reluctant to come forward with their own claims of discrimination. *See, e.g.,* Pl. Reply in Support of PI, Ex. 4 (Decl. of Eddie Lee Key ¶ 11); Ex. 5 (Decl. of Doris Johnson 2).

Although the D.C. Circuit has not expressly ruled on this issue, other circuits have acknowledged that evidence of a "chilling effect" on the willingness of other employees to come forward with claims of discrimination may establish "irreparable injury." *See Marxe v. Jackson,* 833 F.2d 1121, 1125–26 (3d Cir.1987); *Garcia v. Lawn,* 805 F.2d 1400, 1405 (9th Cir.1986); *Holt v. Continental Group, Inc.,* 708 F.2d 87, 91 (2d Cir.1983). In addition, Jordan cites several cases in which members of this Court have granted preliminary injunctive relief to address a "chilling effect" on the willingness of third parties to come forward with discrimination claims. *See Bonds,* 950 F.Supp. at 1214–15; *Neal v. D.C. Dep't of Corrections,* 1996 WL 293525, 1996 U.S. Dist. LEXIS 7967 (D.D.C. May 30, 1996); *Segar v. Civiletti,* 516 F.Supp. 314, 320 (D.D.C.1981) ("*Segar*").

In *Segar,* the plaintiff, the highest-ranking African American agent in the Drug Enforcement Agency ("DEA") sought to enjoin the agency from transferring and

demoting him prior to the final adjudication of his Title VII claims. 516 F.Supp. at 319. After finding that the plaintiff had demonstrated a likelihood of success on the merits of his retaliation claim by setting forth a *prima facie* case and demonstrating that the agency's non-discriminatory reasons were pretext, the court in *Segar* held that he had shown "irreparable harm" based on the negative effect on third parties. *Id.* at 320. The court found that the retaliatory transfer against the highest ranking African American agent would send a message to class members to "know your place, don't challenge management, don't assert your right to equal employment opportunity." *Id.* In a similar vein, the court in *Bonds* acknowledged that "a plaintiff who demonstrates that an adverse personnel action is likely to have a chilling effect on other employees, who, after witnessing their fellow co-worker's discharge or dismissal, would now refuse to file claims in fear of reprisals, would also meet *Sampson's* barrier." 950 F.Supp. at 1215.

DOC responds that Jordan cannot show "irreparable injury" based on a "chilling effect" because there has been no perceptible change in the filing of EEO complaints from the three months prior to Jordan's transfer and the three months following the transfer. Mot. to Dismiss, Ex. 3 (Decl. of Bernadette Worthy). In addition, DOC asserts that "the courtroom on May 13, 2004, was filled with persons apparently there on behalf of the plaintiff who felt no compulsion about appearing in public to support their position." Def. Suppl.

Mem. 2. Finally, DOC argues cases cited by the plaintiff recognizing a "chilling effect" as "irreparable injury" can be distinguished because they involve termination of an employee, not a lateral transfer.[9] Id. at 2–3.

Although the Court finds these particular arguments by DOC unpersuasive, it nonetheless concludes that the limited, but plausible, evidence of a "chilling effect" on third parties is not sufficient to overcome her failure to demonstrate a likelihood of success on the merits and thereby justify the issuance of injunctive relief. *See Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1507 (D.C.Cir.1995) ("Given the inadequacy of [the plaintiff's] prospects of success on the merits, there may be no showing of irreparable injury that would entitle him to injunctive relief."). This is especially so because the Court finds that in addition to Jordan's failure to demonstrate a likelihood of success on the merits, the issuance of injunctive relief in this case would cause substantial harm to the government, by impeding its efforts to make personnel decision relating to its July 2003 reorganization, and would certainly not serve the public interest. Simply stated, to grant injunctive relief in a case where the plaintiff is unlikely to prove she was subjected to an "adverse action" would circumvent the entire Title VII framework, especially where the administrative process has not yet run its course. Accordingly, the Court finds that preliminary injunctive relief is not appropriate in this

---

9. DOC also spends a significant portion of its reply brief arguing that a subsequent case, *Moore v. Summers*, 113 F.Supp.2d 5 (D.D.C. 1995), which distinguished *Bonds* and *Segar*, should govern the disposition of Jordan's claims for injunctive relief. Def. Reply in Support of Mot. to Dismiss 3–5. In that case, the court held that preliminary injunctive relief should not be granted to enjoin undefined retaliatory action where the plaintiffs failed to identify any specific future retaliatory action. *Id.* at 25. The Court agrees that it would be inappropriate to grant preliminary injunctive relief against DOC where no specific retaliatory action had been alleged, but that is not this case. Jordan's pleadings seek specific relief regarding her transfer and reasonable accommodations.

case. The plaintiff's motion for preliminary injunctive relief is DENIED.

## II. DOC's Motion to Dismiss the Amended Complaint

DOC also moves for dismissal of Jordan's Amended Complaint under the Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). Fed.R.Civ.P. 12(b)(6), 12(b)(1). DOC argues that the complaint should be dismissed because Jordan has failed to exhaust administrative remedies required to bring suit in federal court under Title VII. For the following reasons, the Court GRANTS DOC's motion to dismiss the Title VII claims (Counts II, III).

### A. Standard of Review

The Court will only dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). However, even if the Court accepts as true all of the factual allegations set forth in the complaint, *Doe v. United States Dept. of Justice,* 753 F.2d 1092, 1102 (D.C.Cir.1985), and construes the complaint liberally in favor of the plaintiff, *Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979), it "need not accept inferences drawn by [the] plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint." *Kowal,* 16 F.3d at 1276.

It is the plaintiff's burden of persuasion to establish the existence of subject matter jurisdiction by a preponderance of the evidence. *Thompson v. Capitol Police Board,* 120 F.Supp.2d 78, 81 (D.D.C.2000). Where a motion to dismiss presents a dispute over the factual basis of the court's subject matter jurisdiction, the Court "may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant" and therefore "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting, Inc. v. Republic of Angola,* 216 F.3d 36, 40 (D.C.Cir. 2000); *In re Swine Flu Immunization Products Liability Litigation,* 880 F.2d 1439, 1442–43 (D.C.Cir.1989).

### B. Failure to Exhaust Administrative Remedies under Title VII

■ DOC asserts that once Jordan's claim for preliminary injunctive relief has been denied, this Court has no jurisdiction to evaluate her claims on the merits because she has not complied with the exhaustion requirements of Title VII. Under the Title VII framework, a complainant has the right to file an action in district court either "[w]ithin 90 days of the receipt of notice of final action" taken by the employing agency or if 180 days have passed since the filing of the complaint and the complainant is aggrieved by the agency's failure to take final action. 42 U.S.C. § 2000e–16(c); *see also Bayer v. U.S. Dep't of Treasury,* 956 F.2d 330, 332 (D.C.Cir.1992). Compliance with administrative exhaustion is a mandatory prerequisite to filing a civil action under the statute. *Id.*

In this case, Jordan filed her formal discrimination complaint with OCR on December 16, 2003 and then filed the current action on March 5, 2004. There is no indication that she has received a "right to sue" letter from DOC or the EEOC and her complaint in this case was filed before the 180–day period had expired. Accordingly, the Court finds that Jordan has not exhausted her administrative remedies with regard to her Title VII claims. DOC's motion to dismiss is thus GRANTED as to those claims.

However, in addition to her Title VII claims, Jordan's Amended Complaint included claims asserted under the Title II of the ADA, the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the DCHRA. DOC has moved for 12(b)(6) dismissal of the entire Amended Complaint. Although the Court is inclined to grant the motion based on the sparse allegations of the Amended Complaint, as Jordan has not expressly responded to the motion to dismiss with regard to her remaining claims, the Court will stay its ruling on these claims pending further briefing in response to the motion to dismiss. Accordingly, as is set forth in the accompanying Judgment and Order, Jordan shall within ten days of the issuance of this opinion show cause why the remaining claims of her Amended Complaint should not be dismissed pursuant to Rule 12(b)(6).

### *ORDER AND JUDGMENT*

For the reasons set forth in the Memorandum Opinion accompanying this Order and Judgment, it is this 3rd day of December, 2004, hereby

**ORDERED** that the plaintiff's Motion for Preliminary Injunction [# 2] is **DENIED**; and it is further

**ORDERED** that the defendant's Motion to Dismiss [# 4] is **GRANTED** in part, and that the plaintiff's Title VII claims (Counts I and II of the Amended Complaint) are **DISMISSED**; and it is further

**ORDERED** that the plaintiff shall within ten (10) days of this Order and Judgment show cause why the remaining claims of the Amended Complaint should not be dismissed; and it is further

**ORDERED** that upon receipt of the plaintiff's response, the defendant may file a reply within ten (10) days of such response; and it is further

**ORDERED** that the plaintiff's Motion for Leave to File a Second Amended Complaint [# 22] is **DENIED**; and it is further

**ORDERED** that the plaintiff's Motions to Expedite [## 24, 27] are **DENIED** as moot.

**SO ORDERED.**